## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO. 3:22-CV-00048-RGJ-CHL

TAYLOR D.,[1]                                                                     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                    Defendant.

### REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Taylor D. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 10.) Claimant and the Commissioner each filed a Fact and Law Summary. (DNs 11, 15.) Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I.       BACKGROUND

On or about April 25, 2019, Claimant filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on May 29, 2018. (R. at 15, 247, 260, 262, 275, 277, 290, 292, 305, 428-41.) On August 18, 2021, Administrative Law Judge ("ALJ") Susan Brock ("the ALJ") conducted a hearing on Claimant's application. (*Id.* at 35-62.) In a decision dated September 2, 2021, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 12-33.) In doing so, the ALJ made the following findings:

---

[1] Pursuant to General Order 22-05, the Plaintiff in this case is identified and referenced solely by first name and last initial.

1.      The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.  (*Id.* at 17.)

2.      The claimant has not engaged in substantial gainful activity May 29, 2018, the alleged onset date.  (*Id.*)

3.      The claimant has the following severe impairments: epilepsy, depressive disorder, adjustment disorder with anxiety, attention deficit hyperactivity disorder (ADHD), and Asperger's syndrome.  (*Id.*)

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.* at 18.)

5.      [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolding, can frequently balance, stoop, kneel, crouch, and crawl, should avoid all exposure to unprotected heights or operation of hazardous machinery, can understand, remember, and carryout simple instructions and tasks requiring short learnings [*sic*] periods of thirty days or less and requiring little independent judgment, can occasionally interact with co-workers, supervisors, and the general public, can tolerate occasional changes in the workplace and recognize hazards but would do best in an environment that does not require fast pace and production quotas. (*Id.* at 19.)

6.      The claimant is unable to perform any past relevant work.  (*Id.* at 25.)

7.      The claimant . . . was 22 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (*Id.*)

8.      The claimant has at least a high school education.  (*Id.*)

9.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.  (*Id.*)

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id.*)

11.     The claimant has not been under a disability, as defined in the Social Security Act, from May 29, 2018, through the date of this decision. (*Id.* at 26.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on December 6, 2021.  (*Id.* at 1-6, 419-27.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2021); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Accordingly, Claimant timely filed this action on February 4, 2022.  (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2021).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that

if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.    Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2021). In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)    Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2021).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.   Claimant's Contentions

Claimant argued that the ALJ erred in several ways. She argued that the ALJ erred in her analysis of Listing 11.02 regarding epilepsy and Listing 12.04 regarding depressive, bipolar, and related disorders. (DN 11, at PageID # 5662-65.) She also alleged a number of errors in the ALJ's determination of her RFC. (*Id.* at 5665-67.) In particular, she argued that the ALJ erred by failing to include limitations related to heat exposure, bilateral fine motor speed/dexterity, missing work, and her need for additional time to complete a task. (*Id.* at 5665-69.) She also claimed that the ALJ erred in her evaluation of the opinions of the state agency medical consultants and her treating neurologist, Dr. Rebekah Woods, D.O. ("Dr. Woods"). (*Id.* at 5667.) She claimed that these errors in the ALJ's determination of her RFC caused errors at later steps. (*Id.* at 5668.) The undersigned will address these arguments below.

### 1.   Listings

Claimant argued that the ALJ erred in her analysis of Listings 11.02 and 12.04. (DN 11, at PageID # 5662-65.) At step three of the five-step evaluation process, the ALJ considers whether the claimant has an impairment that satisfies the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, which are generally referred to as the "Listings." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "[A] claimant who meets the requirements of a listed impairment will be

deemed conclusively disabled." *Rabbers v. Comm'r Soc. Sec. Admin.,* 582 F.3d 647, 653 (6th Cir. 2009). A claimant's impairment satisfies a Listing only when the claimant manifests the specific requirements described in the Listing's medical criteria. 20 C.F.R. §§ 404.1525(d), 416.925(d) (2021). To meet the requirements of a listed impairment or its equivalent, a claimant must demonstrate specific findings that duplicate the enumerated criteria of the listed impairment. *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). The claimant bears the burden of proving his or her impairment satisfies all the specified criteria in a given Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ did address both Listings 11.02 and 12.04 in her opinion. (R. at 18-19.) As to Listing 11.02 regarding epilepsy, the ALJ's entire analysis was as follows:

> The evidence does not establish the claimant has met listing 11.02 for Epilepsy because there is no evidence for tonic-clonic or dyscognitive seizures occurring at the requisite intervals despite adherence to prescribed treatment, and no evidence for marked limitations in physical functioning, understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, or adapting or managing oneself.

(*Id.* at 18.) Claimant argued that the ALJ erred by omitting "discussion of the evidence that may have been sufficient to equal the listing" and in failing to resolve conflicting evidence contradicting her conclusion. (DN 11, at PageID # 5662.) As to Listing 12.04, the ALJ concluded that the Claimant did not have the required degree of limitation in the paragraph B criteria or any evidence of the paragraph C criteria. (R. at 18-19.) Claimant disputed these conclusions and, in particular,

argued that her multiple suicide attempts warrant a stronger finding regarding her ability to adapt and manage herself.  (DN 11, at PageID # 5664.)

Given that there are so many potential Listings, the regulations do not require an ALJ to address every Listing in his or her findings.  *Sheeks v. Comm'r Soc. Sec. Admin.*, 544 F. App'x 639, 641 (6th Cir. 2013).  If "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing."  *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).  A "substantial question" requires the claimant to "point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing."  *Smith-Johnson*, 579 F. App'x at 432.  Without such evidence, the ALJ "does not commit reversible error by failing to evaluate a listing at Step Three."  *Id*. at 433.

The regulations do not specify how much discussion an ALJ must provide regarding those Listings as to which a substantial question is raised.  However, the Sixth Circuit has held that in evaluating whether a claimant has met a particular Listing, an ALJ must "actually evaluate the evidence, compare it to . . . the [relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review."  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).  This is not a heightened articulation standard because as the Sixth Circuit has also acknowledged the applicable regulations only require the ALJ to *consider* whether the Listings are applicable; they do not require the ALJ to provide "good reasons" as in the context of the former treating physician rule.  *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(3), (a)(4)(iii) and *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), *as amended*); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).  Nor do the applicable regulations regarding the Listings require an ALJ to explain how he or she

considered particular factors as they do in the context of the new rules applicable to opinion evidence. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2021) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").   While some unpublished Sixth Circuit cases have found that a court may properly look to the ALJ's analysis elsewhere in the decision to assess what the ALJ considered at step three, others discourage speculating as to the ALJ's analysis.[3] *Compare Bledsoe*, 165 F. App'x at 411 ("The mere failure to discuss every single impairment under the step three analysis is not a procedural error."), *and Forrest*, 591 F. App'x at 366 ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."), *and Smith-Johnson*, 579 F. App'x at 435 ("It also is proper to consider the ALJ's evaluation . . . at other steps of his decision . . . ."), *with Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *6 (6th Cir. Mar. 6, 2017) (noting that while the district court looked elsewhere in the ALJ's opinion to see what medical evidence the ALJ had cited, "[t]he district court should not have speculated what the ALJ may have concluded had he considered the medical evidence under the criteria in Listing 1.02").   Regardless of where a court looks to determine upon what evidence the ALJ relied, if the claimant presents a substantial question as to whether he or she meets the required criteria of a particular Listing, the ALJ's failure to do necessary analysis cannot be deemed harmless error.  *Smith-Johnson*, 579 F. App'x at 433 n.5; *Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019).   The error is not harmless because "the regulations indicate that if a person is found to meet a Listed Impairment,

---

[3] Claimant argued that the Court should not look to the ALJ's analysis elsewhere in the opinion to cure any deficiencies in her Listing analysis.  (DN 11, at PageID # 5665.)  However, in support she cited only to a number of regulations supporting the notion that the analysis made by the ALJ is sequential and to one case for the proposition that an agency is bound to follow its own regulations.  (*Id.*)  The undersigned does not find either of those propositions dispositive of the issue of where in an ALJ's decision a reviewing court can or should look to address whether the ALJ's Listing analysis is supported by substantial evidence.

they are disabled within the meaning of the regulations and are entitled to benefits." *Reynolds*, 424 F. App'x at 416.

With these authorities in mind, as to Claimant's arguments regarding the ALJ's analysis of Listing 11.02, the threshold question then is whether Claimant has raised a substantial question regarding the applicability of that Listing.  Listing 11.02 provides:

> 11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
>
>> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>>
>> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>>
>> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>>
>>> 1. Physical functioning (see 11.00G3a); or
>>> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>> 3. Interacting with others (see 11.00G3b(ii)); or
>>> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>>> 5. Adapting or managing oneself (see 11.00G3b(iv)); or
>>
>> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>>
>>> 1. Physical functioning (see 11.00G3a); or
>>> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
>>> 3. Interacting with others (see 11.00G3b(ii)); or
>>> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>>> 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 11.02 (eff. Apr. 2, 2021).  Claimant first pointed to an opinion by her treating neurologist Dr. Woods and criticized the ALJ for failing to find that Dr. Wood's opinion satisfied the criteria of Listing 11.02(A).  (DN 11, at PageID # 5663.)  However, in examining Dr. Woods's opinion, Dr. Woods did opine that Claimant had "2-4+" convulsive seizures per month but in the preceding question when asked to identify the "[t]ypes of seizures suffered by the patient," Dr. Woods selected "complex partial seizures" and "generalized seizures" and specifically did not select "generalized tonic-clonic seizures," the latter of which is required to meet either Listing 11.02(A) or (C) above.  (R. at 2454.)  Likewise, Claimant failed to explain or point to evidence that the types of seizures selected by Dr. Woods are consistent with the "dyscognitive seizures" required by 11.02(B) and (D) or how the frequency selected satisfies the criteria of either of those sections.   Dr. Woods's opinion also does not contain a "detailed description of a typical seizure" as required.  20 C.F.R. Pt. 404, Subpt. P., App. 1, § 11.02.  While she cited to other records that she claimed "describe[e] the type, frequency and occurrence [of seizures] over more than a 12 month period," an examination of the records themselves reveals that either the records contain her own reports regarding the frequency/type of her seizures (DN 11, at PageID # 5663 (citing R. at 1314, 1388, 1394, 1431, 1862, 1888, 1913, 2006-08, 3039, 3124, 4302, 4915, 5031, 5082, 5589)) or no description at all of what type of seizure occurred (*id.* (citing R. at 1428, 1638, 2003, 2237, 2658, 3128-29)).[4]  This is insufficient to demonstrate the presence

---

[4] The undersigned also notes that at least one of the records on which Claimant relied was not part of the record before the ALJ.  Claimant cited a September 13, 2021, visit at the Norton Neuroscience Institute.  (R. at 75.)  This visit was not part of the record before the ALJ and, instead, was submitted by Claimant to the Appeals Council as part of her appeal.  (*Id.* at 2.)  The Appeals Council found that this record and the others submitted by Claimant "d[id] not show a reasonable probability that it would change  the outcome of the decision."  (*Id.*)  Pursuant to well-established Sixth Circuit precedent, this Court's review is limited  to the evidence that was in the administrative record when the ALJ rendered a decision. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  The Court may only consider evidence outside the record for purposes of determining whether a sentence-six remand is appropriate.  As Claimant made no argument regarding a sentence six remand, the undersigned sees no need to address the same herein.  For these reasons, the undersigned will not utilize the records found at record pages 63-246 in determining whether the Commissioner's decision is based upon substantial evidence.

of the Listing criteria above.  *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §11.00H2 ("We require at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures. If you experience more than one type of seizure, we require a description of each type.").  While the Commissioner's brief includes a detailed summary of why other findings made by the ALJ elsewhere in her decision support her Listings analysis, the undersigned declines to engage in that analysis as it is unclear it is proper to do the same under the above authorities.  Instead, the undersigned finds that Claimant has not demonstrated that the record raises a substantial question as to whether she meets the required criteria of Listing 11.02.  Thus, while the ALJ's analysis was succinct and cited to little evidence, the undersigned finds that the ALJ did not commit reversible error in her discussion of Listing 11.02.

As to Listing 12.04 and as noted above, Claimant argued that the ALJ should have addressed her multiple suicide attempts in her Listing analysis and that those attempts should have resulted in a finding that she had an extreme limitation in her ability to adapt and manage herself. (DN 11, at PageID # 5664.)  Here, again, Claimant has failed to produce evidence sufficient to raise a substantial question as to whether she meets *all* criteria of the relevant listing.  Listing 12.04 provides in relevant part:

> 12.04 Depressive, bipolar and related disorders (see 12.00B3), satisfied by A and B, or A and C:
>
>> A. Medical documentation of the requirements of paragraph 1 or 2:
>>
>>> 1. Depressive disorder, characterized by five or more of the following:
>>>
>>>> a. Depressed mood;
>>>> b. Diminished interest in almost all activities;
>>>> c. Appetite disturbance with change in weight;
>>>> d. Sleep disturbance;

e. Observable psychomotor agitation or retardation;
f. Decreased energy;
g. Feelings of guilt or worthlessness;
h. Difficulty concentrating or thinking; or
i. Thoughts of death or suicide.

. . .

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" [*sic*] that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.04 (eff. Apr. 2, 2021). The ALJ found that Claimant did not meet the criteria of this Listing, and while Claimant focuses her argument on the ALJ's finding regarding the Paragraph B criteria, she fails to point to evidence demonstrating that she met all of the required Paragraph A or Paragraph C criteria. In other words, even if the undersigned agreed with her regarding the Paragraph B criteria, she has failed to demonstrate she otherwise meets Listing 12.04. This failure is fatal to her claim. Notwithstanding the same, the undersigned also finds she has insufficiently tied the claimed evidence on which she relies to a need for an "extreme

limitation" as opposed to a lesser degree of the same.  In assessing Claimant's ability to adapt and manage herself, the ALJ found Claimant only experienced a moderate limitation.  (R. at 18.)  In support, the ALJ relied on the fact that Claimant cared for a dog, completed personal care tasks, prepared simple foods, cleaned her room, did household chores like laundry and dishes, shopped, watched television, and occasionally did arts and crafts.  (*Id.*)  The introductory section to the 12.00 Listings defines what the Listing means as an ability to adapt or manage oneself, stating,

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. Pt. 404, Subpt. P, App. 1, at § 12.00E(4).  While the suicide attempts discussed by Claimant do seem relevant to this definition, Claimant has failed to sufficiently tie the evidence she claimed to an extreme limitation as opposed to a marked limitation in this area.  To meet Listing 12.04, Claimant must show an extreme limitation in one or a marked limitation in two of the Paragraph B Criteria.  *Id.* at § 12.04.  The ALJ found moderate limitations in all areas, including Claimant's ability to adapt or manage herself.  The next step up from a moderate limitation would be a marked limitation, meaning that a claimant's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited."  *Id.* at § 12.00F(2)(d).  An extreme limitation is only appropriate when a claimant is "not able to function in [an] area independently, appropriately, effectively, and on a sustained basis."  *Id.* at § 12.00F(2)(e).  In view of the other evidence cited by the ALJ, it is unclear that Claimant's suicide attempts would have resulted in an extreme limitation as would be required to demonstrate error in the ALJ's Paragraph

B analysis.  Thus, the undersigned finds that the ALJ's analysis of Listing 12.04 was supported by substantial evidence.

Because the undersigned has rejected both of Claimant's arguments regarding errors in the ALJ's Listing analysis, the undersigned finds that the same was supported by substantial evidence generally.

### 2.      RFC

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c) (2021).  The ALJ bases his or her determination on all relevant evidence in the case record.  20 C.F.R. §§ 404.1545(a)(1)-(4), 416.945(a)(1)-(4).  Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations.  20 C.F.R. §§ 404.1520c, 416.920c; 20 C.F.R. §§ 404.1529, 416.929 (2021).  Claimant argued that the ALJ should have included additional limitations in her RFC related to heat exposure, bilateral fine motor speed/dexterity, missing work, and her need for additional time to complete a task.  (*Id.* at 5665-69.)  She also claimed that the ALJ erred in her evaluation of the opinions of the state agency medical consultants and her treating neurologist, Dr. Woods.  (*Id.* at 5667.)

### a)      Additional Limitations

As to her claims regarding the additional limitations the ALJ should have added to her RFC, Claimant cites in support to SSRs 96-8p and 16-3p and argues that an ALJ's RFC determination "must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in the file was considered in the assessment."  (DN 11, at PageID # 5666 (quoting SSR 96-8p, 61 Fed. Reg. 34474, 34478

14

(July 2, 1996)).)  The undersigned finds Claimant's citation to SSR 16-3p to be largely irrelevant to Claimant's arguments.  SSR 16-3p relates to the process the ALJ must follow in assessing a claimant's statements that he or she is experiencing pain or other symptoms.  SSR 16-3p, 82 Fed. Reg. 49462 (Oct. 25, 2017).  However, Claimant's arguments regarding additional limitations to be added to the ALJ do not call into question compliance with SSR 16-3p in any meaningful way, and Claimant does not specify any claimed errors regarding this SSR.  On the other hand, SSR 96-8p is relevant.  SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  SSR 96-8p, 61 Fed. Reg. at 34478.  It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual.  *Id.* at 34476-77.  Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull.  *Id.* at 34477.  Nonexertional limitations relate to an individual's potential postural, manipulative, visual, communicative, and mental limitations and ability to tolerate various environmental factors.  *Id.*  However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged."  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).  The undersigned will address each proposed limitation by Claimant separately below.

### (1)    Temperature Extremes

Claimant argued that because the ALJ cited to her treating doctor's note that heat from a hot shower would trigger seizures, the ALJ should have included a temperature limitation in her RFC.  (DN 11, at PageID # 5665 (citing R. at 22).)  The ALJ noted in her RFC determination that Claimant reported to her provider that she had a dizzy spell in the shower and complained that her

seizure medication may be wearing off.[5]  (R. at 22 (citing *id.* at 5468-5610).)  The ALJ recounted that Claimant's provider adjusted her seizure medication dosage and advised Claimant "to avoid extremely hot showers as they could exacerbate symptoms of dizziness."  (*Id.*)  As a starting point, the undersigned is unpersuaded that a provider's advice to avoid hot showers has any particular application to Claimant's exertional or nonexertional limitations while at work.   However, Claimant's argument provides a less than full picture of all the evidence related to potential temperature limitations discussed by the ALJ in her RFC analysis.  The July 2020 record was not the only record regarding potential temperature restrictions cited by the ALJ.  The ALJ noted that Dr. Dotson in 2019, Dr. Tamkur in 2020, and Dr. Woods in 2017 all opined that Claimant should avoid situations where a loss of consciousness could harm other such as working around flame and heat.  (*Id.* at 23-24 (citing *id.* at 1422-1632, 2034-2453).)  The ALJ found that these and the other general seizure-related precautions opined by those physicians were generally persuasive and reasonable.  (*Id.*)  In particular, as to Dr. Woods's opinion, the ALJ phrased Dr. Woods's recommendations as relating to "workplace hazards and operation of machinery" and found that restrictions related to the same were persuasive and "consistent with evidence of record as a whole."  (*Id.* at 24.)  The ALJ also found persuasive the opinions of the state agency medical consultants who restricted Claimant's exposure to workplace hazards but found that Claimant had no limitation in her ability to interact with extreme heat or cold.  (*Id.* at 23, 254-55, 269-70, 283-84, 298-99.)  Based upon this evidence, the undersigned finds that the ALJ included a sufficient narrative discussion supporting her treatment of Claimant's exposure to workplace hazards and that Claimant has failed to establish that the ALJ's omission of any limitation on her exposure to extreme temperatures was unsupported by substantial evidence.

---

[5] The ALJ's decision appears to contain a typo as she references this exchange occurring in July 2021, but the record actually reflects it occurred in July 2020.  (*Id.* at 5480-81.)

### (2) Bilateral Fine Motor Speed/Dexterity

Claimant argued that a neuropsychological examination in the record supported the need for limitations on her fine motor speed/dexterity.  (DN 11, at PageID # 5665-66.)  She cited in support to a 2018 evaluation performed by Dr. Brandon C. Dennis, Psy.D ("Dr. Dennis").  (R. at 1111-16.)  As part of his evaluation, Dr. Dennis noted that he observed "[n]o fine motor abnormalities."  (*Id.* at 1112.)  But he also documented low average visual motor integration, borderline bulk grip strength for her dominant hand, low average bulk grip strength for her non-dominant hand, and that "[f]ine motor dexterity, as measured by time to completion on the grooved pegboard test, was impaired for the dominant hand and impaired for the non-dominant."  (*Id.* at 1114.)  He listed in his impressions that "[f]ine motor speed/dexterity was impaired bilaterally."  (*Id.* at 1115.)  While the ALJ did not discuss these findings in her decision, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  Here, as noted above, the ALJ found persuasive the findings of the state agency medical consultants who opined that Claimant had no manipulative limitations.  (R. at 254-55, 269, 284, 299.)  Claimant pointed to no other evidence in the record to support that she had any limitation on her bilateral fine motor speed/dexterity or to any other instance where a provider documented the same.  In the absence of any citation to clinical findings or a provider who placed manipulative or other limitations on Claimant related to Dr. Dennis's findings, the undersigned finds that the absence of limitations on Claimant's bilateral fine motor speed/dexterity from the ALJ's RFC was supported by substantial evidence.

### (3)    Additional Time to Complete Tasks

Claimant argued that her RFC should have included her need for additional time up to time-and-a-half to complete tasks based on "detailed objective testing" in the record.  (DN 11, at PageID # 5666.)  She cited in support to an April 30, 2019, psychological evaluation.  (R. at 763-75.)  The evaluation was completed by a psychology practicum student supervised by a psychologist.  (*Id.* at 775.)  After administering a series of tests, the evaluator recommended that if Claimant returned to school and work that "she receive additional time to complete tasks."  (*Id.*)  Specifically, the evaluator noted, "Having time and a half for timed tasks would likely be beneficial in helping her complete necessary work- or school-related tasks."  (*Id.*)  While the ALJ did not specifically cite to the evaluation in her decision, she did noted that Claimant "attended outpatient mental health treatment for several months after" her December 2018 hospitalization, citing the exhibit in which the evaluation was found.  (*Id.* at 22 (citing *id.* at 747-775).)  As noted above, an ALJ need not specifically discuss every record to indicate that she considered the same.  *Simons*, 114 F. App'x at 733 (quoting *Craig*, 212 F.3d at 436).  In this case, the ALJ's specific citation to the exhibit in which the record was found in combination with the absence of any related limitations in the ALJ's RFC suggests that the ALJ rejected a need for any such limitation.  Here, the ALJ found that Claimant could "understand, remember, and carryout simple instructions and tasks requiring short learning periods of thirty days or less and requiring little independent judgment"; "occasionally interact with co-workers, supervisors, and the general public"; and "tolerate occasional changes in the workplace and recognized hazards."  (R. at 19.)  Notwithstanding these limits, the ALJ found that Claimant "would do best in an environment that does not require fast pace and production quotas."  (*Id.*)  While not a specific limitation that Claimant requires time-and-a-half to complete tasks, these restrictions seem to address the same concerns that such a limitation would have

addressed.  In support, the ALJ relied on the opinions of the state agency psychological consultants. (*Id.* at 23 (citing *id.* at 247-59, 262-74, 277-89, 292-304).)  The state agency psychological consultants reviewed Claimant's Communicare records in which the evaluation cited by Claimant was contained and specifically cited to the same in their evaluations.  (*Id.* at 248, 251, 253, 263, 266, 268, 279, 282, 294, 297.)  The state agency medical consultants found that while Claimant had some understanding and memory limitations, she could

> A. Understand and remember simple instructions and procedures requiring short initial learning periods of usually 30 days or less,

> B. Sustain attention, concentration, consistent effort and adequate pace for simple tasks requiring little independent judgment and involving minimal variations, and doing so for extended periods of two-hour segments, without unreasonable number or length of rest periods, while maintaining regular attendance and being punctual within customary tolerances,

> C. Interact occasionally as needed for task completion with supervisors and peers (at least once up to 1/3 of the time), and interact occasionally (at least once up to 1/3 of the time) with the public, and without need for special supervision, as well as with adequate capacity for responding appropriately to criticism from supervisors and working with or near others without undue distraction,

> D. Adapt adequately to situational conditions and changes in a routine work setting, while also having adequate awareness of normal hazards and capacity to respond with appropriate precautions.

(*Id.* at 257-58, 272-73, 287, 302.)  The ALJ noted that while the Claimant had had some "sporadic and conservative treatment for psychiatric complaints" as well as some "documented psychiatric hospitalizations," "the [C]laimant subsequently associated these episodes with the prescribed medication Keppra, with discontinuation of this medication leading to no additional suicidal behavior on her part." (*Id.* at 23.)  In view of the records and opinions relied on by the ALJ, the undersigned finds that the ALJ's determination of Claimant's mental RFC is supported by substantial evidence.  Claimant's citation to the April 30, 2019, record is nothing more than an attempt to point to substantial evidence in the record that could have supported an opposite

conclusion to that reached by the ALJ, an inquiry that is forbidden to the Court. *See Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108. The undersigned finds Claimant's argument that the ALJ should have included a time-and-a-half limitation to be without merit.

### (4)    Missed Work

Claimant also argued that the ALJ's RFC analysis was deficient because it failed to accommodate that Claimant "would miss 2-4 days a month of work due to her convulsive seizures and additional time would be missed due to her nonconvulsive seizures." (DN 11, at PageID # 5666.) She also claimed that one of her medications, Onfi, caused sleepiness and napping during the day, which would have contributed to her need to take breaks during the day. (*Id.*) The ALJ included no such limitations in her determination of Claimant's RFC.

As to the seizures, the ALJ's decision contained an extensive discussion of Claimant's history of epilepsy and seizures. (R. at 21-22.) The ALJ noted that Claimant had had "a history of seizure disorder since childhood," and summarized her relevant medical treatment between May 2018 and May 2021. (*Id.*) Of particular relevance to Claimant's argument, the ALJ noted that in January 2021, the Claimant "underwent state one deep brain stimulation surgery for medically refractory epilepsy" and that in February 2021, Claimant "underwent her second surgery for deep brain stimulator including placement of a deep brain stimulator, lead extensions, and right infraclavicular internal pulse generator." (*Id.* at 22.) The ALJ emphasized Claimant's reports that her last seizure prior to surgery occurred in September 2020. (*Id.*) Given this evidence, the undersigned finds that the ALJ's decision not to include any missed work related limitations related to Claimant's seizures was supported by substantial evidence.

As to Claimant's medication side effects, "[t]he type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other

symptoms" is one relevant consideration in an ALJ's assessment of the intensity and persistence of a claimant's symptoms and how those symptoms limit his or her capacity for work.  20 C.F.R. § 404.1529(c)(1), (c)(3)(iv); 20 C.F.R. § 416.929(c)(1), (c)(3)(iv); *see Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 504 (6th Cir. 2019) ("The side effects of any medication taken to alleviate pain or other symptoms are relevant to determining the extent to which a claimant's pain and other symptoms limit her capacity for work.").  During her hearing before the ALJ, Claimant reported that one of the medications she takes for her mental health makes her sleepy but she did not specifically identify the medication.  (R. at 48.)  In response to her counsel's questioning, she indicated that she would wake up around 7:00 AM to take her medicine and use the restroom then sleep until about 4 PM at which point she "might do something for a little bit" before she went to "lay back down again."  (*Id.* at 55.)  Claimant cited additional records in her brief in which she reported to her providers at Norton Behavioral Health OBC—to which she had been referred for evaluation prior to her DBS placement—that she took "frequent naps during the day secondary to taking Onfi."  (*Id.* at 4302, 5249, 5263, 5278, 5301, 5346.)  However, Onfi is one of her seizure medications, not a medication she takes for her mental health.  (*Id.* at 2013.)  The ALJ noted multiple times in her decision that Claimant reported sleepiness associated with Onfi to her treating neurological providers.  (*Id.* at 21 (citing *id.* at 2006, 2013, 2679-80, 5034, 5086).)  On at least one occasion, her provider acknowledged that Onfi often caused sleepiness but wanted her to continue the drug to see if it helped control her seizures; her provider recommended she try some of the "most common sleep techniques" in the meantime.  (*Id.* at 2679.)  Claimant cited to no instance where any provider ever detailed the extent of her "sleepiness," including how often she napped during the day, or imposed work-related functional limitations related to her reported side effects. Similarly, Claimant pointed to no portions of the opinion evidence of record that contains any

reference to functional limitations related to her medication side effects. Under these circumstances, the undersigned finds that the ALJ's mention of Claimant's reported side effects but absence of related functional limitations from the RFC determination constitutes a rejection of associated functional limitations. Claimant has not demonstrated that this conclusion is unsupported by substantial evidence or that there was some conflict in the evidence that the ALJ failed to resolve.

### b)      Opinion Evidence

Claimant also argued that the ALJ erred in her evaluation of the opinions of the state agency medical consultants and of Dr. Woods. (DN 11, at PageID # 5667.) The new regulations for evaluating medical opinions are applicable to Claimant's case because she filed her application after March 27, 2017. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[6] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2). An ALJ is not required to explicitly discuss how he or she weighed the other regulatory factors of relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(b)(1)-

---

[6] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2021).

(2), 416.920c(b)(1)-(2).   The undersigned will consider the ALJ's treatment of the state agency medical consultants' opinions and those of Dr. Woods below.

### (1)      State Agency Medical Consultants

Claimant argued that the ALJ erred in relying on the opinions of the state agency medical consultants.  (DN 11, at PageID # 5667.)  Specifically, she argued that those physicians' opinions "suffer from the same failure as those committed by the ALJ," were flawed because "they did not have the record as a whole available to them," and that the ALJ did not provide "an understandable narrative why the record as a whole was consistent with and supported their opinions."  (*Id.*)

As to the first argument, the undersigned has rejected Claimant's arguments above as to additional limitations the ALJ should have incorporated into her RFC analysis.   Thus, the undersigned likewise rejects that the state agency medical consultants' opinions are flawed for failure to include those same additional limitations proposed by Claimant.

As to the second argument, pursuant to the applicable regulations, ALJs must consider the medical findings of state agency medical and psychological consultants because they "are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (2021).  There will always be a gap between the time the agency experts review the record and give their opinion and the time the hearing decision is issued.  *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009).  "Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand."  *Id.*; *see also McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009).  Here, the ALJ provided an extensive discussion of the medical evidence that post-dated the state agency medical consultants' review.   That evidence does not so clearly

invalidate the state agency medical consultants' opinions so as to render reliance on the same untenable.

As to her final argument, to the extent that Claimant intended it as a challenge to the ALJ's procedural compliance with the applicable regulations, the undersigned finds her claim to be without merit.  The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims").  However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally.  *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do

24

require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions"). Here, the ALJ summarized the opinions of the state agency medical and psychological consultants. As to the former, she concluded that their opinions were only generally persuasive and that she had "afforded the [C]laimant some additional benefit of the doubt in the residual functional capacity [ ] set forth above." (R. at 23.) Because the ALJ imposed greater limitations in the RFC analysis she incorporated, the undersigned finds no procedural violation of the applicable regulations. As to the latter, the ALJ noted that their opinions were consistent with Claimant's "treatment records documenting mostly sporadic and conservative treatment for psychiatric complaints over time." (*Id.*) The ALJ also noted that despite Claimant's hospitalizations, she associated her symptoms with one of her prescribed medications that was discontinued. (*Id.*) This discussion is consistent with the articulation requirements imposed by the applicable regulations. Thus, the undersigned finds no violation of the applicable regulations governing an ALJ's analysis of the opinion evidence.

### (2)   Dr. Woods

Claimant argued that by finding the opinion of her treating neurologist, Dr. Woods, only partially persuasive, the ALJ "create[d] a contradiction within her decision," but failed to explain what contradiction that was. (DN 11, at PageID # 5667.) Claimant appeared to incorporate her argument regarding Dr. Woods's opinion purportedly supplying the information necessary to demonstrate that Claimant meets the Listing for epilepsy as an example of this "contradiction." But the undersigned has already rejected this argument above. The ALJ summarized Dr. Woods's opinion regarding the need for Claimant to observe general seizure precautions in 2017 but criticized Dr. Woods's 2020 statement for its failure to provide any details regarding "specific work related limitations." (R. at 24.) Claimant having failed to more specifically articulate how

this latter conclusion is in error, the undersigned finds that the Claimant has failed to show how the ALJ's treatment of Dr. Woods's opinion caused any error in the ALJ's RFC analysis.

### c)    RFC Generally

Based on the conclusions above, the undersigned finds that the ALJ's RFC determination was supported by substantial evidence.  Her analysis more than surpasses the threshold for substantial evidence, which is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations.   And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). Claimant did nothing more than point to other evidence in the record she claimed supported an opposite conclusion to that reached by the ALJ.  However, this Court's role is not to second-guess the ALJ's conclusions.  *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 714 (6th Cir. 2012).

### 3.    Step Five

Claimant also argued that the ALJ's Finding No. 10 was in error because the hypothetical questions the ALJ posed to the vocational examiner ("VE") did not accurately portray Claimant's impairments.  (DN 11, at PageID # 5668.)  At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. §§ 404.1560(c) 416.960(c) (2021); *Jordan*, 548 F.3d at 423.  The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy

26

that the claimant can perform considering the combination of his or her limitations. *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). But a VE's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the economy, *Bradford v. Sec'y Dep't. of Health & Hum. Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), only so long as the VE's testimony is based on a hypothetical question that "accurately portrays [a claimant's] individual physical and mental impairments." *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). *See also Cline*, 96 F.3d at 150. "However, the ALJ is only required to incorporate into the hypothetical questions those limitations which have been accepted as credible." *Hare v. Comm'r of Soc. Sec.*, 37 F. App'x 773, 776 (6th Cir. 2002); *see also Stanley v. Sec'y of Health & Hum. Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.")). The undersigned has already found above the that ALJ's determination of Claimant's RFC was supported by substantial evidence. Thus, the ALJ was not required to include additional limitations related to these capacities in her hypothetical to the VE, and the VE's testimony constitutes substantial evidence to support her step five determination.

Accordingly, the undersigned finds that Claimant has failed to demonstrate any reversible error in the ALJ's step five analysis.

## III.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that final decision of the

Commissioner be **AFFIRMED**.

January 18, 2023

Colin H Lindsay, Magistrate Judge

United States District Court

cc:    Counsel of Record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all Parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).